## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| JOHN O. HANSEN, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: |
| ODYSSEY HEALTHCARE, INC., GENTIVA HEALTH SERVICES, INC., GTO ACQUISITION CORP., JAMES E. BUNCHER, RICHARD R. BURNHAM, JOHN K. CARLYLE, DAVID W. CROSS, PAUL J. FELDSTEIN, ROBERT A. LEFTON, ROBERT A. ORTENZIO, SHAWN S. SCHABEL, DAVID L. STEFFY, | ) ) ) ) ) ) ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) ) ) | |

## PLAINTIFF'S CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTY AND INJUNCTIVE RELIEF

Plaintiff, by his attorneys, submits this Complaint based upon breach of fiduciary duty against Defendants named herein:

### SUMMARY OF THE ACTION

1.      Plaintiff brings this shareholder class action on behalf of himself and the other public shareholders of Odyssey HealthCare, Inc. ("Odyssey" or the "Company") against the Company's Board of Directors (the "Board" or the "Individual Defendants") in connection with the proposed sale of Odyssey to Gentiva Health Services, Inc. ("Gentiva") and GTO Acquisition Corp., a corporation wholly-owned by Gentiva ("Merger Sub"), in an all-cash transaction valued at approximately $1 billion (the "Proposed Acquisition"). Pursuant to the terms of the Proposed Acquisition, Odyssey's shareholders will receive $27 in cash for each share that they own.

1

2.     In connection with the Proposed Acquisition, the Board failed to adequately discharge its fiduciary duties to the shareholders by, *inter alia*: (i) failing to ensure that they will receive maximum value for their shares; (ii) failing to conduct an appropriate sale process; (iii) locking-up of the Proposed Acquisition by agreeing to onerous terms in the Merger Agreement (defined below) with Gentiva that will dissuade or otherwise preclude the emergence of a superior offer or transaction; (iv) including a highly restrictive "Go-Shop" provision in the Merger Agreement making it nearly impossible for an alternative proposal to emerge; and (v) amending the Company's 2001 shareholder Rights Agreement (the "Poison Pill") to exclude Gentiva and the Proposed Acquisition from its scope, thereby rendering, any competing transaction impracticable.

3.     Accordingly, this action seeks equitable relief compelling the Board to properly exercise its fiduciary duties to the shareholders and to enjoin the close of the Proposed Acquisition to prevent irreparable harm.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(2) because complete diversity exists between Plaintiff and each Defendant, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5.     This Court has jurisdiction over each Defendant named herein because each Defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District courts permissible under traditional notions of fair play and substantial justice.

6.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) because: i) Odyssey maintains its principal place of business in this District; ii) one or more of the Defendants either resides in or maintains executive offices in this District; iii) a substantial portion of the transactions and wrongs complained of herein, including  the Defendants' primary participation in the wrongful acts detailed herein, and aiding and abetting and engaging in a conspiracy in violation of their fiduciary duties owed to Odyssey; and iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

7.      Plaintiff John O. Hansen ("Plaintiff") is, and at all relevant times was, the owner of Odyssey stockholder.  Plaintiff is a citizen of the State of Minnesota.

8.      Defendant Odyssey, a Delaware corporation headquartered in Dallas, Texas, is one of the largest providers of hospice care in the United States.  Its hospice services focus on palliative care for patients with life-limiting illnesses, which is care directed at managing pain and other discomforting symptoms, and addressing the psychosocial and spiritual needs of patients and their families. It provides medial, psychosocial care, and other support services related to the patient's terminal illness.  The Company offers nursing care, medical social services, physician services, patient counseling, general inpatient care, medical supplies and equipment, drugs for pain control and symptom management, home health aide services, homemaker services, respite inpatient care, and family bereavement counseling, as well as physical, occupational, and speech therapy services.  The Company's common stock trades on the NASDAQ Stock Market ("NASDAQ") under the symbol "ODSY."  The Company was founded in 1995 and its corporate offices are located at 717 N. Harwood, Suite 1500, Dallas, Texas, 75201.

9.      Defendant Gentiva provides home health services in the United States. The company offers skilled nursing and therapy services, paraprofessional nursing services, and homemaker services primarily to adult and elderly patients through licensed and Medicare-certified agencies. It also provides its services through specialty programs comprising Gentiva Orthopedics, which offers individualized home orthopedic rehabilitation services; Gentiva Safe Strides, which provides therapies for patients with balance issues; and Gentiva Cardiopulmonary, which helps patients and their physicians manage heart and lung health in a home-based environment. In addition, the company provides services through Gentiva Neurorehabilitation, which offers therapies for patients with neurological injury; Gentiva Senior Health, which addresses the needs of patients with age-related diseases; and its Rehab Without Walls unit, which provides neurorehabilitation therapies for patients with traumatic brain injury, cerebrovascular accident injury, and acquired brain injury. Gentiva's current hospice operations ae in six southeastern states: Alabama, Georgia, Florida, Mississippi and Tennessee.  Gentiva's common stock publicly trades on the NASDAQ under the symbol "GTIV."  Gentiva is a Delaware company founded in 1999 and its corporate headquarters are located at 3350 Riverwood Parkway, Suite 1400, Atlanta, Georgia, 30339.

10.     Merger Sub is a Delaware corporation that is wholly-owned by Gentiva and formed solely to effectuate the Proposed Acquisition. Where appropriate from the context of the allegations, Merger Sub is referred to herein collectively with Gentiva as "Gentiva."

11.     Defendant James E. Buncher ("Buncher") has served as a director of Odyssey since December 2006. Defendant Buncher is a director, as well as a member of Odyssey's Audit Committee and Nominating & Governance Committee. Buncher is believed to be a citizen of the State of California.

4

12.     Defendant Richard R. Burnham ("Burnham") co-founded Odyssey in 1995 and has served as Chairman of the Board and a director since that time. Defendant Burnham served as the Company's President from August 1995 to December 2001 and from October 2004 to October 2005, and as its Chief Executive Officer ("CEO") from August 1995 to January 2004 and from October 2004 to October 2005. Defendant Burnham is a director, as well as a member of Odyssey's Acquisitions Committee and Compliance Committee.  Burnham is a citizen of the State of Texas.

13.     Defendant John K. Carlyle ("Carlyle") has served as a director of Odyssey since November 2001. Defendant Carlyle is a director, as well as a member of Odyssey's Acquisitions Committee, Audit Committee and Nominating & Governance Committee.  Carlyle is a citizen of the State of Texas.

14.     Defendant David W. Cross ("Cross") has served as a director of the Odyssey since February 1996. Defendant Cross is a director, as well as a member of Odyssey's Acquisitions Committee, Audit Committee, Compliance Committee and Nominating & Governance Committee. Cross is a citizen of the State of Pennsylvania.

15.     Defendant Paul J. Feldstein ("Feldstein") has served as a director of Odyssey since May 2002. Defendant Feldstein is a director, as well as member of Odyssey's Compensation Committee, Compliance Committee and Nominating & Governance Committee. Feldstein is a citizen of the state of California.

16.     Defendant Robert A. Lefton ("Lefton") has served as Odyssey's President, CEO and a director since October 2005. Defendant Lefton is a director of Odyssey.  Leton is a citizen of the State of Texas.

17.     Defendant Robert A. Ortenzio ("Ortenzio") has served as a director of Odyssey since July 2006. Defendant Ortenzio is a director, as well as a member of Odyssey's Compensation Committee and Nominating & Governance Committee.  Ortenzio is a citizen of the State of Pennsylvania.

18.     Defendant Shawn S. Schabel ("Schabel") has served as a director of Odyssey since July 2003. Defendant Schabel is a director, as well as a member of Odyssey's Acquisitions Committee, Compensation Committee and Nominating & Governance Committee. Schabel is a citizen of the State of Kansas.

19.     Defendant David L. Steffy ("Steffy") has served as a director of Odyssey since February 1996. Defendant Steffy is a director, as well as a member of Odyssey's Audit Committee and Nominating & Governance Committee.  Steffy is a citizen of the State of California.

20.     Defendants named above in ¶¶ 11-19 are sometimes collectively referred to herein as the "Individual Defendants."

21.     The Individual Defendants, together with Defendants Odyssey and Gentiva, are collectively referred to herein as "Defendants."

**FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS**

22.     By reason of the above Individual Defendants' positions with the Company as directors, said individuals are in a fiduciary relationship with Plaintiff and the other public stockholders of Odyssey and owe Plaintiff and the other members of the Class a duty of highest good faith, fair dealing, loyalty and full, candid and adequate disclosure.

23.     Each of the Individual Defendants is required to act in good faith, in the best interests of a corporation's stockholders, and with such care, including reasonable inquiry, as would be expected of an ordinarily prudent person. In a situation where the directors of a

publicly traded company undertake a transaction that may result in a change in corporate control, the applicable state law requires the directors to take all steps reasonably required to maximize the value stockholders will receive rather than use a change of control to benefit themselves, and to disclose all material information concerning the proposed change of control to enable the stockholders to make an informed voting decision. To diligently comply with this duty, the directors of a corporation may not take any action that:

        A.      adversely affects the value provided to the corporation's stockholders;

        B.      contractually prohibits them from complying with or carrying out their fiduciary duties;

        C.      discourages or inhibits alternative offers to purchase control of the corporation or its assets; or

        D.      will otherwise adversely affect their duty to search and secure the best value reasonably available under the circumstances for the corporation's stockholders.

24.      As described herein, the Individual Defendants have breached their fiduciary duties in a willful, reckless and wanton manner by taking actions designed to spur and deter higher offers from other potential acquirers so as to ensure that one bidder and one bidder only, Gentiva, acquires the Company and its future potential on terms preferential to Gentiva and certain Individual Defendants, and harmful to the public stockholders of Odyssey. The Individual Defendants have recklessly breached their fiduciary obligation to act reasonably.

## SUBSTANTIVE ALLEGATIONS

**A.**      <u>**Background of Proposed Acquisition**</u>

25.      On June 11, 2010 Odyssey filed with the SEC a preliminary proxy statement (the "Prelim. Proxy") which recommends that the shareholders vote in support of the Proposed Acquisition.

26.     Prior to announcing the Proposed Acquisition, the Company had explored strategic business combinations with undisclosed Companies; however the details of these strategic alternatives remain unknown.

27.     From October 6, 2009 to approximately December 11, 2009, the Company explored a strategic combination with an undisclosed Company, that is only referred to as "Company A" in the Prelim. Proxy. Ultimately, these explorations resulted in the Company sending a written, non-binding proposal letter to this mystery company proposing a tax-free strategic business combination of the two companies. Additional discussions ensued between the Company and "Company A" until late January 2010 when "Company A" declined Odyssey's proposal.

28.     In early February 2010, Odyssey explored a transaction with another undisclosed company, which the Prelim. Proxy refers to as "Company B." Discussions ensued through March 30, 2010 when Odyssey receiver a written preliminary non-binding proposal letter from "Company B" to purchase all of Odyssey's outstanding capital stock for $22.00 per share in cash. On April 1, 2010, Odyssey scheduled a meeting on April 7, 2010 of its Board to discuss "Company B's" proposal letter.

29.     Around the same time, a representative of Gentiva's financial advisor contacted Defendant Lefton to arrange a meeting with Gentiva's CEO for the purpose of discussing a potential business combination between Odyssey and Gentiva. On April 7, 2010, Gentiva's CEO expressed Gentiva's interest in acquiring Odyssey.

30.     Later on April 7, 2010, the Board instructed Defendant Lefton to advise "Company B" that the price offered was not sufficient for Odyssey to enter into a confidentiality agreement with Company B.

31.     On April 13, 2010, after Lefton contacted the CEO of "Company B" advising that the initial price offered was not sufficient, "Company B" increased its offer price to $23.25 per share in cash.   On April 15, 2010, the Board, senior management and the Company's financial advisor discussed both "Company B's" revised offer and Gentiva's interest in acquiring Odyssey.

32.     Ultimately on April 20, 2010, after a series of negotiations, Odyssey and "Company B" entered into a confidentiality agreement where "Company B" began actively conducting due diligence.

33.     On April 23, 2010, Gentiva delivered a written preliminary non-binding proposal letter to acquire Odyssey for $25.50 per share in cash.   From April 25, 2010 through May 23, 2010, Gentiva conducted its due diligence.

34.     On May 6, 2010, "Company B's" outside legal counsel distributed to Odyssey an initial draft of a proposed merger agreement structured as a two-step transaction, with a cash tender offer followed by a merger.   Discussions and negotiations continued between Odyssey and "Company B" and Gentiva.

35.     On May 20, 2010, Gentiva's board of directors approved the merger agreement and directed its management to present to Odyssey an all cash merger offer of $27.00 per share. Negotiations and discussed continued, which was delivered to Odyssey by Gentiva on May 21, 2010.   After receiving Gentiva's May 21 proposal, the Company's financial advisor contacted "Company B's" financial advisor to notify "Company B" that that another party had delivered a final proposal on May 21.   Company B's financial advisor advised that Company B still had a serious interest in acquiring Odyssey.

36.     On May 23, 2010, the Board met to consider the final proposal from Gentiva. Knowing Company B was still interested in acquiring the Company, Odyssey and Gentiva executed the Merger Agreement.

   **B.     The Proposed Acquisition**

37.     On May 24, 2010, Odyssey announced that it had signed a definitive merger agreement in connection with the Proposed Acquisition, pursuant to which Odyssey shareholders will receive $27 per share in cash upon completion of the merger ("Merger Agreement").

38.     Analysts are expecting combined annual revenue of $1.8 billion.  The home health care market is worth $72 billion a year and has grown an average of 6.3% in each of the last five years.  Sophia Snyder, an analyst with market research firm IBISWorld, calls the deal "an important diversification for a provider of home health care."  She notes that "[b]y merging with other providers, industry operators are able to spread costs, such as administration, marketing and purchases, over more locations."

39.     As reported in an article by The New York Times published on May 24, 2010, the Proposed Acquisition "would create the nation's largest provider of home health and hospice care."  The same article also noted that the week prior to the announcement of the Proposed Acquisition, "Gentiva was one of four home health care providers that received letters from the Senate Finance Committee this month questioning whether the companies increased their patient visits out of medical necessity or to qualify for higher Medicare reimbursements."

40.     The transaction was unanimously approved by the Board of Directors of Gentiva and Odyssey.  Odyssey's Board of Directors has also recommended that Odyssey's shareholders approve the merger.

41.     The transaction is expected to close in the third quarter of 2010 and is subject to standard closing conditions, including regulatory approvals and clearance under the Hart-Scott-

Rodino Act as well as approval by Odyssey's stockholders. Since the Proposed Acquisition is a cash transaction, Gentiva will be borrowing an additional $1.1 billion and already has a guarantee from Bank of America, Barclays PLC and the financing arm of General Electric.

42.     The value of Odyssey's stock is greater than the consideration offered by Defendants in connection with the Proposed Acquisition, particularly when considering the Company's present and future growth and profitability objectives.  The home health care market is worth $72 billion a year and has grown an average of 6.3% in each of the last five years.  A further value to Gentiva in this acquisition, as noted by analysts, is that it allows the Company to make a much needed diversification, which should add a further premium to the value of Odyssey.

43.     Commenting about the Proposed Acquisition, *StreetInsider.com* quoted Gentiva CEO and President Tony Strange stating, "[w]e are delighted to welcome the Odyssey employees to the Gentiva family…. The combination of the two companies clearly positions us as a leader in both home health and hospice care in the United States. The two companies share similar geography between Gentiva's home health operations and Odyssey's hospice operations, with very little overlap between the two companies' hospice programs. We believe that Odyssey is the nation's premiere hospice provider and we are excited to partner with an organization that shares our commitment to quality patient care."

44.     Additionally, Defendant Lefton was quoted stating, "[t]his agreement represents an exciting opportunity to provide Odyssey's stockholders with significant, immediate and certain value, while also accelerating our strategy.  With Gentiva, we are bringing together two complementary businesses that are positioned for continued leadership in the hospice industry. We believe Gentiva shares our commitment for compassionate, personalized care, and we look

forward to better serving our patients and their families with the enhanced resources and depth of the combined company."

45.     Odyssey's future prospects are bright.  In late April, the Company reported an increase in net income for the first quarter to $13.40 million to $0.40 per share from $8.72 million or $0.26 per share in the same period last year.  Net patient service revenue for the quarter rose to $171.50 million from $167.53 million in the prior-year period.   Clearly, Odyssey's operations and prospects are poised for growth. Odyssey's stock price has steadily risen throughout the year. Indeed, the Company's stock price doubled in the last year. The steady increase in the Company's stock price suggests that the market has increasing confidence in the Company's prospects and intrinsic value. Accordingly, the Board timed the Proposed Acquisition to capture Odyssey's future potential for Gentiva without paying an adequate or fair price to the Company's public stockholders.

## C.     The Terms of the Merger Agreement

46.     The terms of the Merger Agreement will dissuade or otherwise preclude the emergence of a superior transaction including, for example, and as detailed below, the restrictive "Go Shop" provision, the amendment to the Poison Pill, and the onerous termination fee.

**The Restrictive Go-Shop Provision**

47.     The "Go-Shop" provision, contained in Section 5.02 of the Merger Agreement, provides that Odyssey is permitted to encourage and solicit proposals for a competing transaction from third parties between May 23, 2010 through 11:59 p.m., Central time, June 22, 2010 (the "Go-Shop Termination Date"). However, the restrictions of the Go-Shop provision makes it difficult, if not impossible, for a third party to meet the requirements of the Go-Shop provision in effort to make a superior proposal.

48.     Specifically, after the Go-Shop Termination Date, Odyssey may continue discussions only with an "Excluded Party," which is defined in the Merger Agreement as any third party from whom Odyssey or any of its representatives received an "Acquisition Proposal" (defined in the Merger Agreement as an offer by a third party to purchase 25% or more of the Company's assets or common stock) prior to the Go-Shop Period Termination date. To be considered an Excluded Party during the Go-Shop period, the Board or any committee thereof must determine in "good faith (after consultation with Odyssey's financial advisor and its outside legal counsel)" that the offer by the third party constituted, or is reasonably likely to lead to, a "Superior Proposal."

49.     In essence, during the course of soliciting a superior bid from potential third party acquirers (a "Superior Proposal") the Board must determine whether a third party is an Excluded Party during the one month Go-Shop period while taking into account, among other things: (i) the legal, financial, regulatory, and other aspects of the Acquisition Proposal; (ii) the third party making the Acquisition Proposal, including the financing terms (and certainty of financing) thereof; and (iii) the likelihood of consummation, and whether consummated, would result in a transaction that is more favorable to the Company stockholders from a financial point of view than the Proposed Acquisition.

50.     Consequently, the process that the Board must undertake to determine whether a potential acquirer is an Excluded Party is restrictive, making it extremely difficult, if not impossible, for a potential acquirer to be considered within the Go-Shop period. Furthermore, the Board is given full discretion as to how it will review and response to any competing proposals.

51.     The Go-Shop provision is favorable only to Gentiva. The restrictiveness of the Go-Shop provision can only be designed to provide an even greater layer of protection for the Proposed Acquisition and dissuade the emergence of any competing offers.

**The Poison Pill Amendment**

52.     Additionally, the Board amended the Poison Pill to exclude Gentiva and the Proposed Acquisition from its scope. Specifically, as alleged in greater detail below, the Board modified the definition of the term "Acquiring Person" under the Poison Pill to expressly exclude Gentiva and the Proposed Acquisition. Any alternative acquirer, however, will remain subject to the Poison Pill. This has devastating consequences on the emergence of a competing transaction.

53.     Under the terms of the Poison Pill, each share of common stock has attached to it a right ("Right") that entitles its holder to certain benefits upon the announcement or effectuation of a transaction involving the beneficial or other acquisition of 17% or more of the Company's outstanding common stock, including any potential third party acquirer that may emerge during the Go-Shop period. Although a person or entity that acquires 17% or more of such stock is deemed an "Acquiring Person" under the terms of the Poison Pill, the Board amended the terms of the Poison Pill to exempt Gentiva from this definition. Under ordinary circumstances, the Poison Pill provides for the automatic trigger of any Rights attached to the common stock acquired by an Acquiring Person - here, however, any potential acquirer other than Gentiva.

54.     Pursuant to the terms of the Poison Pill, the Rights will become exercisable ten business days after the announcement or effectuation of a transaction referenced above. When that occurs, each Right entitles its holder to purchase from the Company one one-thousandths of a share of newly issued preferred stock at an exercise price of $33.34 in cash. If a person or

group becomes an Acquiring Person (a "Flip-In Event"), each Right then outstanding would become a right to buy that number of common shares (or under certain circumstances, the equivalent number of one one-thousandths of a preferred share or other assets or securities of the Company) that at the time of such acquisition would have a market value of two times the purchase price of the Right. In the event that the Company is acquired in a merger or other business combination, or 50% or more of the Company's assets or earning power is sold or transferred (a "Flip-Over Event"), proper provision will be made so that each holder of a Right will thereafter have the right to receive, upon the exercise thereof at the then current purchase price of the Right, that number of shares of common stock of the acquiring company which at the time of such transaction would have a market value of two times the purchase price of the Right.

55.     Moreover, any potential acquirer that offers a proposal during the Go-Shop provision will be subject to the Rights under the Poison Pill. Gentiva, however, is not subject to those Rights. As a result, the Poison Pill will make any transaction other than the Proposed Acquisition prohibitively expensive, if not impossible, to complete, as a result of the substantial share dilution that will occur upon the triggering of the Rights. Consequently, the Poison Pill, standing alone, will dissuade potential acquirers from coming forward in the face of the Proposed Acquisition.

**The Onerous Termination Fee**

56.     Finally, the Merger Agreement includes a provision in which the Board has agreed to pay to Gentiva, under certain circumstances, a $28.9 million termination fee (or, approximately 3% of the value of the Proposed Acquisition) and all fees and expenses incurred in connection with the Merger Agreement. Even if Odyssey terminates the Merger Agreement in

response to a Superior Proposal by an Excluded Party, it is still obligated to pay Gentiva a termination fee in the amount of $24.1 million.

57.     As it stands, the Proposed Acquisition does not adequately value Odyssey shares. Instead, as a direct result of the Board's abandonment of duty, the Proposed Acquisition will benefit Gentiva. Accordingly, in the absence of injunctive relief, shareholders will not be able to make an informed decision about whether to vote in favor of the Proposed Acquisition.

## DEFENDANTS FAILED TO MAXIMIZE SHAREHOLDER VALUE

58.     As a result of defendants' conduct, Odyssey's public shareholders have been and will continue to be denied the fair process and arm's-length negotiated terms to which they are entitled in a sale of their Company.  In order to meet their fiduciary duties, the Individual Defendants are obligated to explore transactions that will maximize shareholder value, not structure a preferential deal for themselves.

59.     The consideration reflected in the Proposed Acquisition agreement does not reflect the true inherent value of the Company that was known only to the Individual Defendants at the time the Proposed Acquisition was announced.

## SELF-DEALING OF DEFENDANTS

60.     By reason of their positions with Odyssey, the Individual Defendants are in possession of non-public information concerning the financial condition and prospects of the Company, and especially the true value and expected increase future value of Odyssey. Moreover, despite their duty to maximize value, the Defendants have clear and material conflicts of interest and are acting to better their own interests at the expense of Odysseys' shareholders.

61.     The Proposed Acquisition represents an effort by Defendants to aggrandize their own financial position and interests at the expense of and to the detriment of Class members. Specifically, Defendants are attempting to deny Plaintiff and the Class their shareholder rights

via the sale of Odyssey on terms that do not adequately value the Company. Accordingly, Odyssey's sale will only benefit defendants.

62.     In light of the foregoing, the Individual Defendants must, as their fiduciary obligations require:

- Withdraw their consent to the sale of Odyssey and allow the shares to trade freely – without impediments including a termination fee;

- Act independently so that the interests of Odyssey's shareholders will be protected; and

- Adequately ensure that no conflicts of interest exist between the Individual Defendants' own interests and their fiduciary obligation to maximize shareholder value or, if such conflicts exist, to ensure that all conflicts be resolved in the best interests of Odyssey's public shareholders; and

63.     The Individual Defendants have also approved the Proposed Acquisition so that it dilutes Plaintiff and the Class' share of Odyssey's revenues, and profits for an inadequate consideration.

<strong>CLASS ACTION ALLEGATIONS</strong>

64.     Plaintiff brings this action on his own behalf and as a class action pursuant to Fed. R. Civ. P. 23 on behalf of a class comprised of all shareholders of Odyssey (except Defendants herein and any person, firm, trust, corporation or other entity related to or affiliated with any of the Defendants) or their successors in interest, who have been or will be adversely affected by the conduct of the Defendants alleged herein (the "Class") and all other persons similarly situated.

65.     This action is properly maintainable as a class action.

66.     The Class is so numerous that joinder of all Class members is impracticable. There are questions of law and fact which are common to members of the Class and which

predominate over questions affecting any individual members.  The common questions include, *inter alia*, the following:

a. whether the Individual Defendants have breached their fiduciary duties of undivided loyalty, independence or due care with respect to Plaintiff and the other members of the Class in connection with the Proposed Acquisition;

b. whether the Individual Defendants are engaging in self-dealing in connection with the Proposed Acquisition;

c. whether the Individual Defendants have breached their fiduciary duty to secure and obtain the best price reasonable under the circumstances for the benefit of Plaintiff and the other members of the Class in connection with the Proposed Acquisition;

d. whether the Individual Defendants are unjustly enriching themselves and other insiders or affiliates of Odyssey;

e. whether the Individual Defendants have breached any of their other fiduciary duties to Plaintiff and the other members of the Class in connection with the Proposed Acquisition, including the duties of good faith, diligence, honesty and fair dealing;

f. whether the Individual Defendants have breached their fiduciary duties of candor to Plaintiff and the other members of the Class in connection with the Proposed Acquisition by soliciting shareholder votes in favor of the Proposed Acquisition based upon inadequate disclosures;

g. whether the Proposed Acquisition compensation payable to Plaintiff and the Class is unfair and inadequate;

    h.   whether the Individual Defendants, in bad faith and for improper motives, have impeded or erected barriers to discourage other offers for the Company or its assets;

    i.   whether defendant Gentiva has induced or aided and abetted breaches of fiduciary duty by members of Odyssey's Board of Directors; and

    j.   whether Plaintiff and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated.

67.    Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation in this nature. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff has the same interest as the other members of the Class. Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

68.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

69.    Plaintiff anticipates that there will be no difficulty in the management of this litigation.

70.    For the reasons stated herein, a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

71.    Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## FIRST CAUSE OF ACTION

### Breach of Fiduciary Duty of Due Care, Loyalty and Good Faith
### Against the Individual Defendants

72.     Plaintiff repeats and realleges each allegation set forth herein.

73.     The Individual Defendants have thus far failed to publicly announce an open bidding process or other procedures best calculated to maximize stockholder value. Instead of attempting to obtain the highest price reasonably available for Odyssey's stockholders, the Individual Defendants have taken actions that will only serve their own interests and the interests of Gentiva while inhibiting the maximization of stockholder value.

74.     The Individual Defendants were and are under a duty:

        a)      to fully inform themselves of the market value of Odyssey before taking, or agreeing to refrain from taking, action;

        b)      to act in the best interests of the equity owners;

        c)      to maximize stockholder value;

        d)      to obtain the best financial and other terms when the Company's independent existence will be materially altered by a transaction; and

        e)      to act in accordance with their fundamental duties of good faith, fair dealing, due care and loyalty.

75.     By the acts, transactions and courses of conduct alleged herein, the Individual Defendants, individually and as part of a common plan and scheme, or in breach of their fiduciary duties to Plaintiff and the other members of the Class, are willfully, recklessly and wantonly implementing and abiding by a process that will deprive Plaintiff and other members of the Class of the true value of their investment in Odyssey.

20

76.     If the Individual Defendants' actions are allowed to stand, Odyssey stockholders will be deprived of the opportunity for substantial gains they may realize if Defendants are forced to negotiate in good faith with other interested suitors.

77.     By reason of the foregoing acts, practices and course of conduct, the Individual Defendants, in a willful, reckless and wanton manner, failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other Odyssey public stockholders and were assisted, aided and abetted in that failure by Odyssey, which knowingly assisted Defendants' wrongful acts.

78.     In light of the foregoing, Plaintiff demands that the Individual Defendants, as their fiduciary obligations require, immediately:

a)      Undertake an independent evaluation of Odyssey's worth as an acquisition candidate;

b)      Rescind any and all agreements that inhibit the maximization of stockholder value, including, but not limited, to the Merger Agreement, the termination and other fee provisions in the Merger Agreement, and any agreements to obtain employment for Odyssey insiders;

c)      Appoint a truly independent committee of persons so that the interests of Odyssey's public stockholders will be protected and any subsequent offers will be considered and negotiated in the interest of Odyssey's public stockholders; and

d)      Negotiate, in good faith, with any interested third party, regarding the sale or merger of Odyssey.

79.     Defendants are not acting in good faith toward Plaintiff and the other members of the Class, and have breached and are continuing to breach their fiduciary duties to Plaintiff and the members of the Class.

80.     As a result of the Individual Defendants' unlawful actions, Plaintiff and the other members of the Class will be irreparably harmed in that they will not receive fair value for Odyssey's assets and business and will be prevented from obtaining the real value of their equity ownership in the Company. Unless the Individual Defendants' actions are enjoined by the Court, the Individual Defendants will continue to breach or aid and abet the breach of their fiduciary duties owed to Plaintiff and the members of the Class, and will engage in a process that inhibits the maximization of stockholder value.

81.     Plaintiff and the other members of the Class have no adequate remedy at law.

82.     Plaintiff seeks to obtain a non-pecuniary benefit for the Class in the form of injunctive relief against Defendants. Plaintiff's counsel are entitled to recover their reasonable attorneys' fees and expenses as a result of the conference of a non-pecuniary benefit on behalf of the Class, and will seek an award of such fees and expenses at the appropriate time.

## SECOND CAUSE OF ACTION

### Breach of Fiduciary Duty of Candor
### Against the Individual Defendants

83.     Plaintiff repeats and realleges each allegation set forth herein.

84.     The Individual Defendants were and are under a duty to make sure that Odyssey's stockholders are provided full and complete disclosure concerning important matters which a reasonable stockholder would deem important under the circumstances.

85.     By the acts, transactions and courses of conduct alleged herein, Defendants, individually and as part of a common plan and scheme or in breach of their fiduciary duties to

Plaintiff and the other members of the Class, are attempting unfairly to deprive Plaintiff and other members of the Class of their ability to make an informed decision as to whether to vote in favor of or against the Proposed Acquisition.

86.     Specifically, Defendants have breached their fiduciary duties to Plaintiff and the Class by omitting to disclose material financial information, which a reasonable stockholder would deem important in deciding how to vote.

87.     Odyssey stockholders will, if the Proposed Acquisition is consummated, be deprived of the opportunity to make an educated and informed decision concerning whether to vote their shares in favor of the Proposed Acquisition or not.

88.     By reason of the foregoing acts, practices and course of conduct, Defendants have acted in a willful, wanton and reckless manner in failing to exercise their fiduciary obligations toward Plaintiff and the other Odyssey public stockholders.

89.     As a result of the actions of Defendants, Plaintiff and the other members of the Class have been and will be damaged in that they have not and will not receive adequate and complete disclosure regarding the Proposed Acquisition.

90.     Unless enjoined by this Court, Defendants will continue to breach their fiduciary duties owed to Plaintiff and the other members of the Class, and may consummate the Proposed Acquisition and cause irreparable harm to the Class, as aforesaid.

91.     Plaintiff and the Class have no adequate remedy at law.

92.     Plaintiff seeks to obtain a non-pecuniary benefit for the Class in the form of injunctive relief against Defendants. Plaintiff's counsel are entitled to recover their reasonable attorneys' fees and expenses as a result of the conference of a non-pecuniary benefit on behalf of the Class, and will seek an award of such fees and expenses at the appropriate time.

### THIRD CAUSE OF ACTION

**Aiding & Abetting the Individual Defendants' Breach of Fiduciary Duty
Against Defendants Odyssey and Gentiva**

93.     Plaintiff repeats and realleges each allegation set forth herein.

94.     Defendants Odyssey and the Gentiva are sued herein as aiders and abetters of the breaches of fiduciary duties outlined above by the Individual Defendants, as members of the Board of Odyssey.

95.     The Individual Defendants breached their fiduciary duties of good faith, loyalty, due care and candor to the Odyssey stockholders by failing to:

        a)      fully inform themselves of the market value of Odyssey before entering into the Merger Agreement;

        b)      act in the best interests of the public stockholders of Odyssey common stock;

        c)      maximize stockholder value;

        d)      obtain the best financial and other terms when the Company's independent existence will be materially altered by the Merger Agreement; loyalty;

        e)      act in accordance with their fundamental duties of good faith, due care and loyalty; and

        f)      disclose all material information concerning the transaction to enable Odyssey's stockholders to cast informed votes on the Proposed Acquisition.

96.     Such breaches of fiduciary duties could not and would not have occurred but for the conduct of Odyssey and Gentiva, which, therefore, aided and abetted such breaches via entering into the Merger Agreement.

97.     Odyssey and Gentiva had knowledge that they were aiding and abetting the Individual Defendants' breach of their fiduciary duties to the Odyssey stockholders.

98.     Odyssey and Gentiva rendered substantial assistance to the Individual Defendants in their breach of their fiduciary duties to the Odyssey stockholders.

99.     As a result of Defendants' conduct of aiding and abetting the Individual Defendants' breaches of fiduciary duties, Plaintiff and the other members of the Class have been and will be damaged in that they have been and will be prevented from obtaining a fair price for their shares and will not be able to cast an informed vote with all material information concerning the Proposed Acquisition.

100.    As a result of the unlawful actions of Odyssey and Gentiva, Plaintiff and the other members of the Class will be irreparably harmed in that they will not receive fair value for Odyssey's assets and business, will be prevented from obtaining the real value of their equity ownership in the Company, and will be voting on the basis of inadequate and incomplete information concerning the Proposed Acquisition. Unless the actions of Odyssey and Gentiva are enjoined by the Court, they will continue to aid and abet the Individual Defendants' breach of their fiduciary duties owed to Plaintiff and the members of the Class, and will aid and abet a process that inhibits the maximization of stockholder value and the disclosure of material information.

101.    Plaintiff and the other members of the Class have no adequate remedy at law.

102.    Plaintiff seeks to obtain a non-pecuniary benefit for the Class in the form of injunctive relief against Defendants. Plaintiff's counsel are entitled to recover their reasonable attorneys' fees and expenses as a result of the conference of a non-pecuniary benefit on behalf of the Class, and will seek an award of such fees and expenses at the appropriate time.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in Plaintiff's favor and in favor of the Class and against Defendants as follows:

A.      Declaring that this action is properly maintainable as a class action, certifying a Class of stockholders, and certifying Plaintiff as Class representative and Plaintiffs counsel as Class counsel;

B.      Declaring and decreeing that the Merger Agreement was entered into in breach of the fiduciary duties of the Individual Defendants and is therefore unlawful and unenforceable;

C.      Enjoining Defendants from proceeding with the Merger Agreement;

D.      Enjoining Defendants from consummating the Proposed Acquisition and directing Defendants to implement procedures to obtain the highest possible price for the Company;

E.      Reversing any aspect of the Merger Agreement that has been performed;

F.      Directing the Individual Defendants to exercise their fiduciary duties to obtain a transaction which is in the best interests of stockholders until the process for the sale of the Company is completed and the highest possible price is obtained;

G.      Directing the Individual Defendants to exercise their fiduciary duty to disclose all material information in their possession concerning the Proposed Acquisition prior to the stockholder vote on the same;

H.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

I.      Granting such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED:  July 2, 2010                    Respectfully Submitted,

                                        /s/William B. Federman
                                        William B. Federman
                                        State Bar No. 00794935
                                        FEDERMAN & SHERWOOD
                                        10205 N. Pennsylvania Avenue
                                        Oklahoma City, OK 73120
                                        Telephone: (405) 235-1560
                                        Facsimile:  (405) 239-2112
                                        wbf@federmanlaw.com

                                             -and-

                                        2926 Maple Avenue, Suite 200
                                        Dallas, Texas 75201

                                        Thomas J. McKenna
                                        GAINEY & McKENNA
                                        295 Madison Ave., 4th Floor
                                        New York, NY 10017
                                        Telephone:  (212) 983-1300
                                        Facsimile:  (212) 983-0383
                                        mescarment@gaineyandmckenna.com

                                        *Counsel for Plaintiff*

JS 44 (TXND Rev. 2/10)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

## DEFENDANTS

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Attorneys (If Known)

## II. BASIS OF JURISDICTION   (Place an "X" in Box Only)

- ☐ 1  U.S. Government
  Plaintiff
- ☐ 2  U.S. Government
  Defendant
- ☐ 3  Federal Question
  (U.S. Government Not a Party)
- ☐ 4  Diversity
  (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                              and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN   (Place an "X" in One Box Only)

- ☐ 1  Original
  Proceeding
- ☐ 2  Removed from
  State Court
- ☐ 3  Remanded from
  Appellate Court
- ☐ 4  Reinstated or
  Reopened
- ☐ 5  Transferred from
  another district
  (specify)
- ☐ 6  Multidistrict
  Litigation
- ☐ 7  Appeal to District
  Judge from
  Magistrate
  Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing **(Do not cite jurisdictional statutes unless diversity)**:

Brief description of cause:

## VII. REQUESTED IN
## COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND:      ☐ Yes   ☐ No

## VIII. RELATED CASE(S) (See instructions):
## RGP FCR IG 'QT'ECNQUGF<

JUDGE _____                          DOCKET NUMBER _____

DATE _____             SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____